———

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| TODD BROWN, | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6:14-CV-00047 |
| | § | |
| v. | § | |
| ATLAS OIL COMPANY, *et al.* | § | |
| Defendant | § | |

### PLAINTIFF'S SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT

      NOW COMES TODD BROWN, hereinafter called Plaintiff, complaining of and about ATLAS OIL TRANSPORTATION, INC. hereinafter called Defendant, and for cause of action shows unto the Court the following:

### I.

### DISCOVERY CONTROL PLAN LEVEL

1.  Pursuant to the Texas and Federal Rules of Civil Procedure, Plaintiff pleads that discovery should be conducted in accordance with a discovery control plan pursuant to the Initial Discovery Protocols for Employment Cases Alleging Adverse Action.

## II.

## PARTIES AND SERVICE

2.  Plaintiff, Todd Brown, is an individual whose address is 33 Pebble Drive, Victoria, Texas 77905.

3.  Defendant Atlas Oil Transportation, Inc., a Corporation based in Michigan, is organized under the laws of the State of Texas, and does business in Texas, and has been served.

## III.

## JURISDICTION AND VENUE

4.  The subject matter is within the jurisdictional limits of this Court.

5.  Plaintiff seeks:

    a.  Monetary relief including damages of any kind including for back pay and future pay, mental anguish, exemplary damages, other penalties, costs, expenses, pre-judgment interest and attorney fees.

6.  This Court has jurisdiction over the parties because the Defendant is a Texas resident and is operating substantial commercial operations in the State of Texas.

7.  Venue in Victoria County is permissive in this cause.

8.  Federal Jurisdiction is obatained through diversity of party.

9.  This matter was removed from State District Court Cause No. 14-01-75794-B, Victoria County, Texas.

**IV.**

**RELEVANT FACTS COMMON TO ALL CAUSES OF ACTION**

**A.** **TODD BROWN HAD A LIFE AND CAREER COMMITTED TO PUBLIC AND EMPLOYEE SAFETY AND WAS WRONGFULLY TERMINATED FOR VOICING HIS CONCERNS**

10.    Plaintiff Todd Brown had committed his life and career to the field of public and employee safety. He is a US Military veteran who served in the U.S. Navy from 1984 until 1993, where he worked supervising a five-soldier sonar suite team on a Trident-class nuclear submarine. In the U.S. Navy he received extensive safety and OSHA training, won a National Defense Medal and had substantial related safety and security responsibilities. In 1990 Plaintiff was transferred to the Naval Air Station in Corpus Christi, Texas, where he served shore duty as both a U.S. Federal Police Officer and a Military Police Officer. Then, after earning an Associates Degree in Management from Park College, Plaintiff joined the Corpus Christi Fire Department in 1995 and was ultimately promoted to "Engineer", where he worked with success for the next thirteen years. In this public safety position, he was assigned as a Company Officer and was certified by the Texas Commission on Fire Protection (TCFP) as a Master Fire Fighter, a Fire Instructor 1 and a Certified Driver/Operator/Pumper. He also was awarded a full EMT/Paramedic License by the Texas Department of Health. Plaintiff then joined the Victoria Fire Department in 2008 where he continued training on managing hazardous materials emergencies. He later was named an Adjunct Instructor at Houston Community College where he taught commercial truck driving and related safety courses.

**B. TODD BROWN HAD A BACKGROUND AND EDUCATION IN MANAGEMENT AND ADVANCING HIS CAREER TO A SAFETY MANAGEMENT POSITION BEFORE HE WAS WRONGFULLY TERMINATED**

11.      In June of 2013, as Plaintiff was nearing completion of his Bachelors Degree in Management Sciences, he was hired by the hazardous materials hauling and trucking company, Defendant Atlas Oil Transportation, Inc. Plaintiff's important new position was the key salaried management role of Safety Lead, for which he would receive a salary of $70,000 annually, a $600 monthly car allowance, and extensive health and retirement benefits ("the Employment Contract"). This first management position, earned and achieved through a lifetime of hard work and education and experience, promised to be a major lifetime and life-changing career and earnings advancement transition point for the Plaintiff. His management career had launched and his dreams were coming true.

12.      In his management role as Safety Lead, Plaintiff served as the senior responsible Atlas Oil Transportation, Inc. safety management official located at a brand new and rapidly expanding Victoria, Texas hazardous materials trucking operations central station of Defendants. There he was responsible for overseeing "compliance, safety and accountability" (CSA) with OSHA, US Department of Transportation (USDOT), Federal Motor Carrier Safety Administration (FMCSA), EPA, State of Texas Department of Public Safety (DPS), and many other related safety laws and regulations encompassing approximately 100 drivers who were hauling highly toxic and hazardous materials on the streets and roads of the State of Texas. Plaintiff knew that in this role he had a solemn responsibility not only to his employer, but also to the men, women and children in Texas who might be injured or killed if safety laws and regulations were not strictly observed and carefully and dutifully enforced.

13.    Upon information and belief, the Victoria facility was "greenfield opened" in 2012 because Defendants had received a major new hazardous materials hauling and trucking contract from its key customer **The Phillips 66 Company.** Defendants were therefore hurriedly scrambling to recruit, marshal and assemble a large number of new hazardous materials drivers and trucks to meet the critical start-up operational hauling schedule requirements of this new commercial contract - which reportedly accounted for over half of Defendant's revenues.

14.    As for his role in Defendant's management organization, Plaintiff reported outside of Defendant's Victoria, Texas operational "chain of command." Plaintiff reported directly to Defendant's Senior Director of Safety and Security Bradley Penneau, who was located with Defendant's senior executive team at Defendant's corporate headquarters in Taylor, Michigan. Plaintiff was told that this reporting was assigned to facilitate his "independence" and to avoid "conflicts of interest." Defendant's Senior Director of Safety and Security Bradley Penneau in turn reported directly to Defendant's EVP and General Legal Counsel Edwin "Skip" Herbert, who in turn reported directly to Defendant's Chairman and CEO Sam Simon.

15. Some of the specific responsibilities of Plaintiff in his management position of Safety Lead overseeing hazardous materials hauling safety for Defendants included:

   a.  Overseeing, reviewing and auditing Mandatory Four-week New Driver Safety Training and Related Reporting.

   b.  Overseeing, reviewing and auditing driver Hours of Service (HOS) Duty Status Logs to determine compliance with Federal and State of Texas maximum driving service hours and Related Reporting.

c. Reviewing and auditing mandatory Driver Vehicle Inspection Reports (DVIR's) to determine compliance with Federal and State of Texas regulations and Related Reporting.

d. Overseeing, reviewing and auditing Preventable Vehicle Crashes and Related Reporting.

e. Overseeing, reviewing and auditing Roadside Inspection Violations and Related Reporting.

f. Overseeing, reviewing and auditing Reported Incidents of Unsafe and Aggressive Driving and Related Reporting.

g. Overseeing, reviewing and auditing Reported Workplace Injuries and Illnesses and Related Reporting.

**C. DEFENDANT'S INTENTIONAL DISREGARD OF FEDERAL AND STATE HAZARDOUS MATERIALS TRUCKING SAFETY LAWS AND REGULATIONS AND TODD BROWN VOICING HIS CONCERNS ABOUT THE SAFETY OF THE COMPANY LEAD TO TODD BROWN'S WRONGFUL TERMINATION**

16.     Upon information and belief encompassing this entire paragraph 15 of this Petition, upon becoming the key safety manager or "Safety Lead" at Defendant's Victoria, Texas Hazardous Materials Trucking Operations Center, and as per his professional safety training, Plaintiff participated in a detailed Safety Compliance Audit of the operation for the period of April 1, 2013 through July 30, 2013. Upon information and belief, this audit uncovered an alarming, dangerous and intentional disregard of numerous Federal and State of Texas hazardous materials trucking laws and regulations by Defendants. Plaintiff became alarmed at the attendant risks to the Texas public safety. Upon information and belief, there were serious and widespread safety violations and an operational and managerial culture and

environment that disregarded safety. Whether or not these practices caused or contributed to a crash involving injuries or deaths and direct or conspiratorial criminal culpability, Plaintiff feared that criminal actions could also be brought for all those conspiring to violate the laws and regulations of the USDOT, the FMCSA, the EPA, OSHA and the State of Texas DPS. Further, upon information and belief, if the scope of these violations were understood by the FMCSA, then it was highly likely that an Imminent Hazard Out-of-Service Shut Down Order would be issued by FMCSA that would shut down the Victoria, Texas Hazardous Materials Trucking Operations of Defendant.

17.       Upon information and belief encompassing this entire paragraph 16 of this Petition, just a sample of the alarming findings of the Plaintiff's Safety Audit conducted between April 1, 2013 and July 30, 2013 included:

      a.  Defendants routinely assigned hazardous materials driver runs that they knew would exceed FMCSA Hours of Service (HOS) limits.

      b.  Defendants routinely knowingly allowed drivers to falsify their logbooks to cover up these violations in order to drive illegally over federally permitted on-duty time.

      c.  As evidence of these practices:

          i.  Plaintiff's Safety Audit detected that 1,337 Defendant Driver Hours of Service Worked (HOS) Weekly Duty Logs - or 14.25% of all Federal and State-mandated logs were never completed and were missing.

         ii.  Plaintiff's Safety Audit detected 102 driver-reported violations of the 11 Hour and 14 Hour FMCSA rules and regulations (every 14 hours from "clock-in", a driver cannot exceed 11 hours driving).

      iii.   Plaintiff's Safety Audit detected 634 instances were drivers were actually paid by Defendant for hours reported driven that exceeded the 11 Hour and 14 Hour FMCSA rules and regulations. In these cases the driver's submitted "legal logs," but the company paid them for many additional hours driving.

      iv.   Plaintiff's Safety Audit discovered situations where certain drivers were on duty and driving hazardous materials on Texas roads and highways for 24-28 hour straight periods. Some employees reportedly were paid for 84 hours in a single week in violation of the FMCSA rule that requires 34 hours off driving after a driver hits 70 hours on-duty.

      v.   Plaintiff's Safety Audit discovered and reported that up to 25.8% of all hazardous materials being trucked and shipped on Texas roads by Defendants were being done so in apparent violation of on or more USDOT/FMCSA and State of Texas DPS Driver Hours of Service laws and regulations.

d.  Defendant's drivers had committed an unprecedented three hazardous materials truck rollover crash accidents in the first nine months of 2013 alone. Each of these could be legally and causally-linked to Hours of Service violations and resultantly falling asleep at the wheel, or driver training violations and or driver certification violations.

e.  Plaintiff's Safety Audit uncovered that Defendant drivers were also responsible for eight Preventable Vehicle Crashes on Texas roads between April, 2013 and August, 2013.

f.  Plaintiff's Safety Audit uncovered that Defendant intentionally used antiquated and out-dated "paper driver logs" versus the standard industry convention of "electronic logs" - which were accurate, true, independent and could not be manipulated or intentionally falsified.

g.  Plaintiff's Safety Audit uncovered that approximately 25% of the mandated pre-trip Hazardous Material Driver Vehicle Inspection Reports (DVIR's) were never completed by the drivers. This was also evidenced by and contributed to 13 Roadside Inspection Violations that were cited to Defendants by Texas law enforcement officers between April and August of 2013.

h.  Plaintiffs Safety Audit uncovered widespread failure of new drivers to complete the required four weeks of driving and safety training and Safety Certification in violation of Defendant's contract with **The Phillips 66 Company**. This was also evidenced by and contributed to 7 Roadside Observations of Aggressive and/or Unsafe Driving by Texas law enforcement officers between April and August of 2013.

i.  Plaintiff's Safety Audited also uncovered (i) loads being hauled by the Defendants personnel who were general labourers not licensed hazardous materials drivers; (ii) the intentional and knowing hiring of a driver with a widely known and recognized previous serious truck roll-over crash;
(iii) the failure by Defendant's Human Resources personnel in instances to conduct required independent driving record background investigations for new drivers; (iv) the continued retention of Defendant's drivers after they committed rear-end crashed while hauling hazardous materials;

(v) numerous hydrogen sulfide (H2S) driver exposure injuries and eye injuries

due to OSHA violations; and (vi) numerous other unlawful operating practices.

**D. TODD BROWN WAS WRONGFULLY TERMINATED FROM VOICING HIS CONCERN TO THE COMPANY FOR POTENTIAL CIVIL AND CRIMINAL PENALTIES FROM INTENTIONAL SAFETY VIOLATIONS**

18.        Upon information and belief encompassing this entire paragraph 17 of this

Petition, in his management role as Safety Lead of Defendant's new Victoria hazardous

materials hauling center serving Defendant's customer **The Phillips 66 Company**, Plaintiff

observed and dutifully reported to all members of Defendants senior management numerous

likely physical, operating and reporting violations of the following acts and regulations

which could carry *civil* and/or *criminal* penalties and sanctions:

  a.  The Hazardous Materials Transportation Act (HMTA) 49 USC

  b.  The Hazardous Materials Transportation Uniform Safety Act of 1990

  c.  The Hazardous Materials Transportation Authorization Act of 1994

  d.  The Surface Transportation Safety Assistance Act

  e.   The Occupational Safety and Health Act of 1970

  f.  The Environmental Protection Act of 1990

  g.  Federal Regulations of the Federal Motor Carrier Safety Administration and the US Department of Transportation Safety Permit Registrations and Operating Authority Documents.

  h.  State of Texas Regulations of Hazardous Materials Transporters: 37 Texas Administrative Code and Other DPS Regulations

  i.   Other Federal and State Statutes and Regulations

19.  Upon information and belief encompassing this entire paragraph 18 of this Petition,

Plaintiff's safety violation warning communications were made to:

    a.  Defendant Chairman and CEO Sam Simon

    b.  Defendant President and Chief Operating Officer Michael Evans

    c.  Defendant Executive Vice President Robert Kenyon

    d.  Defendant Executive Vice President, General Counsel and Secretary Edwin "Skip" Herbert

    e.  Defendant Vice President of Operations Michael Ruehring

    f.  Defendant Director of Human Resources Laila Powers

**E.** **ATLAS OIL'S SENIOR EXECUTIVES RESPOND TO REPEATED SERIOUS FEDERAL AND STATE SAFETY LAW VIOLATION WARNINGS BY ILLEGALLY FIRING PLAINTIFF AS SAFETY MANAGER AND ELIMINATING THE LOCAL VICTORIA, TEXAS SAFETY FUNCTION**

20.      Upon information and belief encompassing this entire paragraph 19 of this Petition, by September of 2013, Plaintiff had communicated on numerous occasions in live meetings all of Defendant's very serious and repeated violations of Federal and State hazardous materials trucking laws and regulations - including those that carried both **civil and criminal penalties for violation.** Defendants did not properly act to eliminate these operating violations and Plaintiff began being warned by certain of Defendant's managers and employees that Defendant senior management would soon fire him for being such an ardent and serious safety advocate and not simply "looking the other way."

21.      Upon information and belief encompassing this entire paragraph 20 of this Petition, on September 3, 2013 Plaintiff advised a Defendant driver that he should be wearing safety glasses while unloading hazardous materials from a trailer. The Defendant's driver responded, "*I was told that I do not have to listen to you anymore. Nobody has to*

*listen to you, and you can't fire anyone anyways. You are going to lose your job soon anyway! Hit the welfare line BITCH!"* Another of Defendant drivers who witnessed the exchange also contemporaneously commented *"I too heard something about someone being fired."*

22.	Upon information and belief encompassing this entire paragraph 21 of this Petition, several weeks later Plaintiff uncovered a situation where a Defendant driver had been hired by defendant without Federally required driving background check for accidents or rollovers being conducted by Defendant's Human Resources department. Others defendant drivers came forward to present this safety violation to Plaintiff as Safety Lead. On September 25, 2013 Plaintiff secured from the State of Texas Department of Public Safety the driving history of this individual driver and discovered that he had in fact perpetrated a serious rollover accident in his previous job with Enterprise Crude Oil, LLC. This would of course make him unqualified and barred under Defendant's policies from driving hazardous materials for Defendants. The driver reacted to these facts by exclaiming to discoverable third parties, *"I do not care about this. Michael Ruehring will protect me."* Michael Ruehring is the Vice President of Operations for Defendants who had direct management oversight of the Victoria operations and who was very frequently at the site.

23.	Upon information and belief, one week later Plaintiff was informed in writing by Defendant Laila Powers, who is Director of Human Resources for Defendant, that he was immediately fired and terminated as Safety Lead in Victoria, Texas. Defendant Powers also reported that Defendant's were eliminating the local Safety Lead position entirely.

## V.

## CAUSES OF ACTION

### A. WRONGFUL DISCHARGE FOR FAILURE TO COMMIT AN ILLEGAL ACT

24.      To the extent not inconsistent and upon information and belief in these
allegations, Plaintiff incorporates the allegations set forth in paragraphs 1 through 22 above.

25.      As a condition of his employment, Plaintiff was required by Defendants to
directly and indirectly and as a potential co-conspirator engage in actions that violated
numerous Federal and State hazardous materials transportation safety laws and regulations.
A number of these laws and regulations carry both potential and serious *civil* and *criminal*
penalties for knowing and intentional violation. In addition, the increasing serious accidents
being perpetrated by defendant's drivers could also easily have spawned imminent criminal
actions for reckless negligence and manslaughter and other criminal causes of action if
injuries and deaths were causally linked to these violations.

26.      Plaintiff refused at all times to commit these required illegal acts.

27.      Plaintiff's employment was terminated for refusing to commit these required
illegal acts mandated by Defendants.

    a.  Defendants also collectively acted with *malice* in terminating Plaintiff as they
(i) committed the wrongful act, (ii) absent justification, (iii) with the intent to
cause harm to the Plaintiff, (iv) in conscious violation of the law, and (v) that
resultantly injured Plaintiff. Defendants collectively also acted with a mental state
indicating a disregard of their social duty and a tendency towards malfeasance.

28.      Refusal to commit required illegal acts was the sole reason for Plaintiff's

employment termination.

29.      As a result of Defendant's action, Plaintiff has suffered actual damages for which

the Defendants are individually jointly and severally liable, including as outlined above, but

not limited to:

   a.  Back pay;

   b.  Future pay and reduction in pay;

   c.  Mental anguish;

   d.  Exemplary damages;

   e.  Punitive damages;

   f.  Prejudgment interest;

   g.  Court costs; and

   h.  Attorneys fees.

30.  This amount of damages is in excess of the minimum jurisdiction levels of this court.


## B.  DECLARATORY RELIEF THAT PLAINTIFF EMPLOYMENT CONTRACT IS ENFORCEABLE AND BECAUSE OF FEDERAL STATUTORY PRE-EMPTION WAS NOT AT WILL

31.      To the extent not inconsistent with and upon information and belief in these

allegations, Plaintiff incorporates the allegations set forth in paragraphs 1 through 30 above.

32.      Federal law provides numerous safety and health-related statutory exceptions that

override the Texas "employment at will doctrine". These include an employee wrongfully

discharged by a private sector employee for whistleblowing about:

   a.  Job-related health and safety. Occupational Safety & Health Act of 1970 (OSHA),
       29 U.S.C. § 660(c).

b. Violations of commercial motor vehicle safety regulations. Surface Transportation Assistance Act. 49 U.S.C. § 31105.

c. Mishandling of Toxic Substances. Toxic Substances Control Act of 1976. 15 U.S.C. § 2622.

d. Other Federal statutes.

33.     There is a real and immediate dispute between the parties regarding the validity of Plaintiff's Employment Contract with Defendants.

34.     Pursuant to the Uniform Declaratory Judgement Act, Texas Civil Practice and Remedies Code §37.001 et seq., Plaintiff requests that the Court issue a declaratory judgment declaring that Federal statutes exempt Plaintiff's Employment Contract with Defendant from the Texas "at-will" doctrine and presumption and therefore that the Employment Contract is enforceable under the laws of the State of Texas. Plaintiff and Defendant freely entered into the Employment Contract, and it is supported by valuable consideration.

35. Plaintiff has incurred costs and reasonable and necessary attorney fees in seeking this declaratory judgment.


**C.** **W**RONGFUL **D**ISCHARGE AND **B**REACH OF **E**MPLOYMENT **C**ONTRACT

36. To the extent not inconsistent with and upon information and belief of these allegations, Plaintiff incorporates the allegations set forth in paragraphs 1 through 35 above.

37. Plaintiff had an enforceable written Employment Contract with Defendants that also included contemporaneous oral commitments from Defendants to Plaintiff that evidenced an unequivocal intent to restrict Defendant's right to discharge Plaintiff for cause to preserve

his independence and effectiveness as a Safety Manager without any conflicts of interest.

38.  As a result of Defendants wrongfully discharging Plaintiff and breaching his

Employment Contract, Plaintiff has been damaged in excess of the minimum jurisdictional

limits of this Court, for which Plaintiff seeks, in the alternative, to recover actual damages,

plus interest thereon at the legal rate.  Plaintiff is also entitled to recover costs and

reasonable attorneys' fees and expert witness fees. Furthermore, the Defendants are jointly

and severally liable for all of these damages.


## VI.

### ACTUAL DAMAGES

39.  As set forth above in detail, Plaintiff has suffered economic injuries in the excess of the

minimum jurisdictional limits of this Court as a result of the actions and/or omissions of the

Defendants described hereinabove.


## VII.

### EXEMPLARY OR PUNITIVE DAMAGES

40.  As is well-settled law in Texas as found by our Texas Supreme Court, a Plaintiff can

recover unlimited exemplary or punitive damages if Defendants acted with malice in

wrongfully terminating employment for refusal to commit an illegal act. Safeshred v.

Martinez, 365 S.W.3d 655, 660 (Tex, 2012).

41.  Defendants in this case collectively acted with malice in terminating Plaintiff as they (i)

committed the wrongful act, (ii) absent justification, (iii) with the intent to cause harm to the

Plaintiff, (iv) in conscious violation of the law, and (v) that action resultantly injured Plaintiff. Defendants collectively also clearly acted with (i) a mental state indicating a disregard of their social duty and (ii) a tendency towards malfeasance.

42. Furthermore, the Defendants are personally jointly and severally liable for all of these damages.

## VIII.

## OTHER RELIEF REQUESTED

43. Declaratory Judgment: Plaintiff requests that a declaratory judgment be entered under Chapter 37 of the Texas Civil Practice and Remedies Code as follows:

    a.  Declaring the Employment Contract between Plaintiff and Defendants (i) is valid, (ii) is enforceable under the laws of the State of Texas and (iii) is not subject to the employment at will doctrine.

44. Restitution: Plaintiff requests that the Court enter an order requiring Defendants to pay restitution to the Plaintiff.

## IX.

## COSTS AND ATTORNEYS FEES

45. Request is made for all costs and for reasonable and necessary attorneys fees incurred by or on behalf of the Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapter 38 of the Texas Civil Practice and remedies Code and Section 37.009 of the Texas Civil Practice and Remedies Code.

## X.

## ALTERNATIVE ALLEGATIONS

46. Pursuant to Rules 47and 48, Texas Rules of Civil Procedure and the rules of pleadings, allegations in this petition are made in the alternative.

## XI.

## CONDITIONS PRECEDENT

47. Pursuant to TEX. R. CIV. P. 54, Plaintiffs plead that all conditions precedent to Plaintiffs' recovery under the forgoing causes of action and remedies have been performed or have occurred.

## XII.

## JURY DEMAND

48. The plaintiffs hereby demand a trial by jury.

## XIII.

## PRAYER

49.     **WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Todd Brown, respectfully prays that Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants for actual, exemplary and punitive damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of this Court, together with prejudgment and postjudgement interest at the maximum rate allowed by law, declaratory judgments, attorneys fees, costs of

court, and such other relief to which the Plaintiff may be entitled at law or in equity.

whether pled or unpled.

Respectfully submitted,

**THE LAW OFFICES OF**
**ALEX R. HERNANDEZ JR. PLLC**
402 W. Main St.
Port Lavaca, Texas 77979
Phone (361) 552-3100
Fax (361) 552-3111
Cell (361) 935-9055
alexhernandezlaw@gmail.com

Alex R. Hernandez Jr.
ATTORNEY IN CHARGE
Texas State Bar No. 24032411
**So. Dist. No. 35184**

**ATTORNEY FOR PLAINTIFF**
**TODD BROWN**

Gary A. Magnuson
State Bar No. 24043799
gary@alexhernandezlaw.com

## **Certificate of Service**

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on November 5, 2014

Alex R. Hernandez, Jr.
Attorney for Plaintiff